UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Ivan Mai, plaintiff

    V

Citigroup Global Markets Holdings Inc, defendant

12/30/20

## Jurisdiction

1)     This Honorable Court has subject matter jurisdiction over this action pursuant to Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a) and Section 27(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa(a) - "Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business". Defendant is an inhabitant of Manhattan encompassed within the Southern District of NY and has made use of the facilities of a national securities exchange (NYSE also in Manhattan) in connection with the transactions, acts, practices, and courses of business alleged in this complaint. Defendant issued and traded daily stock symbols uwt and dwt repeatedly referenced in this complaint. Other securities fraud cases filed by private individual plaintiffs against the **same defendant** in this **same Honorable Court (SDNY)** include: *Merryman et al. v. Citigroup, Inc., et al. (SDNY)*. 1:15-cv-09185-CM-KNF, *In Re: Citigroup Inc. Securities Litigation (SDNY),* 1:07-cv-09901-SHS. Defendant has admitted to "have fallen short of regulators' expectations"[1], those regulators citing "unsafe and unsound banking practices"[1] over "longstanding failure"[1] easily encompassing the **same time period** as the offenses stated in this complaint – from settling a criminal inquiry with federal prosecutors who claimed that in 2017 that defendant was allowing drug smugglers to use the bank to launder money from Mexico[1] to defendant's agreement on March 19, 2020 (this complaint lists March 18 & 19, 2020 as dates of offense) to paying fine to the OCC for violating the fair housing act[2], to a $900 million clerical error on Aug 16,2020.[3]

2)      This complaint meets the $75,000 threshold for filing in this Honorable Court, citing *ONEPOINT SOLUTIONS LLC v. BORCHERT*, United States Court of Appeals FOR THE EIGHTH CIRCUIT No. 06-2481 starting with the last line on page 9, "We hold that a reasonable jury could award OnePoint damages totaling more than $75,000 should it believe that $66,000 was stolen by the appellees. OnePoint has thus met its burden of establishing that its claim under § 604.14 meets the jurisdictional threshold."  Thus, punitive damages can be used to meet the $75,000 threshold when compensatory damages alone are under $75,000. This amended complaint clearly states defendant's actions exceeded the threshold of merely an ordinary fraud case and meets the requirements for punitive damages under New York State law to be awarded punitive damages for fraud, that "a party must demonstrate that the fraud involved egregious conduct, directed not only at the plaintiff but also at the public at large." Plaintiff highlights below in ***italic bold*** throughout complaint the most 'egregious', 'gross' and 'morally reprehensible' reasons justifying punitive damages. Defendant (abbrev. CGMHI) was the issuer of the two now liquidated & defunct stock as shown in Exhibit A symbol UWT advertised by defendant as **Velocity Shares 3x Long Crude Oil ETNs linked to the S&P GSCI Crude Oil Index ER New** and faithfully tracked that index for months. they were advertised to track for months, investor stockholders (aka "public at large") such as plaintiff built reliable trust in both stocks performing as advertised. However as detailed below, on March 19, 2020, it under tracked the index by over 50 percentage points, causing a nearly 80% loss for uwt stockholders because the fraudulent tracking was at a time when the price of oil was at a historic low and forcing stockholders to sell then after noticing the acute blatant fraud or sell shortly after as the massive drop mandated the liquidation shortly after – either way losing about 80% or more. As detailed below, the ***timing of the fraud coincided exactly TO THE DAY of the NY Governor's order starting the reduction of personnel of non-essential businesses of 50% on March 18 increasing to 100% on March 20, preventing all victims from filing in their home states for all states except NY.***

## Complaint

3)    Attached Exhibit B shows that on March 19, index stated above rose 24.39%. As mentioned in paragraph above, uwt is advertised in its symbol description as

"**Velocity Shares 3x Long Crude Oil ETNs linked to the S&P GSCI Crude Oil Index ER New**".  So "**3x**" would mean that uwt should have rose 24.39% times 3 equaling 73.17%.  But as shown in Exhibit A, on March 19 uwt only increased 23% - a massive 50 percentage point shortfall never corrected for. Exhibit C shows a screenshot of all the transactions made by the plaintiff for only the stock uwt, omitting transactions in other stocks not related to this case for simplification, showing a loss from uwt totaling $84,513.59 (listed as compensatory damages below). Exhibit D is plaintiff's official March 2020 brokerage statement for confirming all the transactions in the simplified Exhibit C.

4) (timing) As stated in paragraph 2 above, uwt had faithfully tracked the index as advertised correctly in real time for months, so obviously defendant used a simple computer program in those months to ensure that if the price of either stock started deviated from the price it should have been to follow the index, the computer would automatically buy or sell enough stock to bring the price to where it should be so that the index was followed correctly.  **Computer programs don't change on their own – a human that had access to the defendant's software must have chosen to change it. Intentional human interference, thus "intentional egregious harm to the plaintiff and public at large (all stockholders)". And this change was made on March 19, 2020** as previously stated that the stock uwt grossly under-tracked the index it was advertised to track. On March 7, 2020, NY Gov Cuomo signed Executive Order No. 202 taking action against the Covid-19 emergency and continued throughout March to expand on the order and on **March 18** issued Order No. 202.6 to "reduce the in-person workforce at any work locations by 50% no later than March 20 at 8:00 p.m.", followed by Order No 202.7 on **March 19** reducing to 75% and Order No. 202.8 on March 20 to 100%. **Clearly the mis tracking was timed to coincide exactly with the closing of defendant's main office in NY to prevent being served summons anywhere except by NY courts via NY Secretary of State who only serves process from summons issued by NY courts.**

5)   Plaintiff also seeks $760,622.31 in punitive damages (nine times compensatory damages), per standard set for most cases by the US Supreme Court, citing *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003) "[I]n practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process".  The article referenced in footnote 1 also details that defendant agreed to pay a fine of $400 million imposed by federal regulators, proving defendant is more than able

to pay the total damages sought in this lawsuit which are much less. Addressing the "guideposts" stated in US Supreme Court Case *BMW of North America v. Gore,* 517 U.S. 559 (1996) for assessing whether a particular award exceeds the constitutional limit of due process in the 14th Amendment as "grossly excessive":

i) The degree of reprehensibility of the defendant's misconduct: In this case was extremely severe as stated throughout this complaint in words in italic bold.

ii) Actual or potential harm: The compensatory damages lost by plaintiff were actual damages lost, not merely potential harm – and not just lost by the plaintiff but by many more stockholders as quantified in part (iii) below.

iii) Punitive damages that could be imposed for comparable misconduct: The uwt prospectus at https://www.sec.gov/Archives/edgar/data/200245/000095010320005510/dp124148_424b3-uwtdwta10.htm shows at the first bullet (page ii) that Citigroup issued $7,641,675,000 in uwt stock outstanding and held by the public (305,667,000 shares at $25/share). As shown in Exhibit A, the closing price of uwt on March 17 (prior to the fraud) was 0.6410/share. So at that share price for the 305,667,000 shares would give an outstanding value for all shares of $195,932,547. An 80% loss as described above calculates to **$156.7 million lost by stockholders to the fraud**. Adding the egregious factors in italic bold below, a nine times ratio of punitive to compensatory damages plaintiff is asking for is appropriate. This lends to the reasoning that perhaps punitive damages should be even much higher than nine times compensatory damages, but plaintiff wishes to stick with the factor of 9 times because a higher multiple could likely lead to reduction on appeal because of the single digit precedent set as customary for most cases in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003).

11) Plaintiff seeks in total:

$  84,513.59  - Compensatory Damages

$760,622.31 – Punitive damages

$       400   – NY court filing fee

$845,535.90 - Total, plus reasonable interest at a customary rate from March 19, 2020, and any additional relief deemed appropriate by this Honorable Court

[1] Oct 7,2020 New York Times [online article](#) by Emily Flitter

[2] March 19, 2019 [online article](#) by Ben Lane

[3] Nov 16, 2020 The Wall Street Journal [online article](#) by Becky Yerak and Alexander Gladstone

Respectfully submitted this 30th day of December, 2020

/s/ Ivan Mai

Ivan Mai, plaintiff